CARLOS F. MARISTANY, demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* R-65-165 *Resuelto:* 19 de abril de 1967

292

Rivera Zayas, Rivera Cestero & Rúa, abogados del recurrente; J. B. Fernández Badillo, Procurador General, e Irene Curbelo, Procuradora General Auxiliar, abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Este caso envuelve una impugnación del poder del Estado Libre Asociado de Puerto Rico para imponer y cobrar al demandante Dr. Carlos F. Maristany la contribución sobre donaciones objeto del litigio. Los hechos que sirven de base a la impugnación son los siguientes:

Don Francisco Gaspar Salichs falleció en el Estado de Nueva York, ciudad de Nueva York, el 16 de octubre de 1959, siendo un ciudadano de dicho Estado allí domiciliado y residente. Falleció bajo un testamento otorgado en dicha ciudad el 17 de diciembre de 1957. De acuerdo con la cláusula 5ta. de dicho testamento el causante dejó todo el remanente de su propiedad mueble e inmueble dondequiera que estuviera situada, a The Hanover Bank, corporación bancaria de Nueva York, en calidad de fideicomiso para los siguientes usos y propósitos:

(a) Dividir la propiedad en fideicomiso en dos porciones, una del 40% del valor del caudal bruto ajustado denominada Fondo Núm. 1, y otra del 60% de dicho valor denominada Fondo Núm. 2. Ordenó al Fiduciario:

(b) Mantener, administrar, invertir y cobrar el ingreso de dichos fondos y pagar el ingreso neto de la manera siguiente durante la vida de su esposa Marguerite Graham Salichs:

(1) Todo el ingreso neto del Fondo Núm. 1 a su dicha esposa durante la vida de ella.

(2) El ingreso neto del Fondo Núm. 2 a ser pagado y distribuido entre once personas en determinada proporción, siendo una de dichas personas el demandante Dr. Carlos F. Maristany en la proporción de un 15%.

(c) Si su esposa le sobreviviera, entonces a la muerte de ella los fondos Núms. 1 y 2 se distribuirían así:

(1) La masa "corpus" y todo ingreso acumulado del Fondo Núm. 1 se distribuiría según dispusiera la esposa por testamento u otro documento a su entera discreción, y en defecto a los beneficiarios mencionados o sus causahabientes.

(2) La masa "corpus" y cualquier ingreso acumulado del Fondo Núm. 2 pasaría a los mismos beneficiarios o sus

causahabientes anteriormente mencionados y en la misma proporción, siendo uno de ellos el demandante.

Bajo las anteriores disposiciones testamentarias resulta que el causante dejó la porción de sus bienes constituida como un Fondo Núm. 2 en dominio útil al demandante y a esas otras personas mientras viviera la esposa, y a la muerte de ésta, consolidarían ellos el dominio pleno de dicha porción. Al morir el causante la esposa le sobrevivió.

Son hechos indisputables en el récord además de los ya expuestos, que: (a) El Fondo Núm. 2 se constituyó con valores y acciones del capital de corporaciones organizadas fuera de Puerto Rico, en Estados de los Estados Unidos. (b) Tales valores y acciones nunca se hallaron situados en Puerto Rico ni los derechos sobre los mismos estuvieron aquí registrados; ni parte alguna de la masa del Fondo Núm. 2 constituyó propiedad radicada en Puerto Rico o relacionada con Puerto Rico. (c) El demandante Dr. Carlos F. Maristany ha sido siempre, y lo era al momento del fallecimiento del causante, un ciudadano de Puerto Rico, aquí domiciliado y aquí residente. (d) Al ocurrir el fallecimiento, el causante era un ciudadano del Estado de Nueva York, allí domiciliado y allí residente y murió bajo un testamento otorgado en dicha ciudad.

La Ley Núm. 303 de 12 de abril de 1946—13 L.P.R.A. secs. 881 a 905 (Ed. 1962) dispone en su Sec. 2 que se impondrá y cobrará *al donatario* de cada donación tributable, y éste pagará, una contribución a los tipos fijados en la Sec. 3. "Donación tributable" se definió en la Sec. 1(e) como el importe de la donación menos el montante de las exenciones concedidas en la Sec. 4. "Donatario", a quien se le impone la contribución, se definió como *la persona que recibe* una donación, e incluye a herederos, legatarios y causahabientes—Sec. 1(b)—.

■ La *donación* está definida en la Sec. 1(a) de la Ley Núm. 303 de 1946 según ésta quedó enmendada por la Núm. 49 de 13 de junio de 1964. Incluye *cualquier* transferencia en fideicomiso y es *toda* transferencia que se haga por herencia, por testamento o abintestato. Dispone el Art. 6 de la Ley Núm. 99 de 29 de agosto de 1925, según fue enmendada por la Ley Núm. 303 de 1946 y leyes posteriores, que siempre que el Secretario de Hacienda así lo ordenare, se tasarán por su valor en el mercado a la fecha del fallecimiento o de la donación, según sea el caso, los bienes de fallecidos y los bienes que sean donados o que sean objeto de donación. El Art. 14 de dicha Ley Núm. 99 de 1925 igualmente enmendado por la Ley Núm. 303 de 1946 y la Núm. 189 de 13 de mayo de 1948 estatuye que la palabra "bienes" o "propiedad" incluirá tanto "bienes raíces" como "bienes muebles o semovientes", y *"cualquiera forma de participación en ellos"*, incluyendo rentas vitalicias o anualidades de cualquiera forma o clase, "así como *el usufructo*, la nuda propiedad *o cualesquiera clase de derechos y acciones"*.

El demandante no impugna la falta de autoridad en ley del Secretario de Hacienda para imponer la contribución en litigio a la luz de las propias disposiciones estatutarias antes transcritas. Tampoco impugna la manera o método en que el Secretario determinó el monto de la contribución impuesta. No puede soslayarse, pues, el ataque constitucional que hace contra el poder mismo del Estado Libre Asociado para requerirle esta contribución ante una situación de hecho como la presente. Sostiene que la contribución es inconstitucional:

(a) Porque la transferencia de los derechos del demandante ocurrió en consecuencia de la muerte de su tío, un ciudadano del Estado de Nueva York, allí domiciliado, amparado por las leyes de dicho Estado. (b) Los derechos que adquirió el demandante lo han sido sobre valores y acciones del capital de corporaciones radicadas dentro de los Estados

Unidos y fuera de Puerto Rico, que no han hecho aquí negocios. (c) Dichos valores y acciones en momento alguno han estado dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico, ni requirieron ley alguna de Puerto Rico para amparar su transferencia. (d) Puerto Rico no puede imponer constitucionalmente la contribución al demandante puesto que no le ha concedido ningún derecho, protección o privilegio en cuanto a la transferencia y adquisición de los derechos que obtuvo bajo las leyes del estado de Nueva York, por razón de los actos testamentarios ocurridos en dicho Estado. (e) No habiendo dependido la transferencia al contribuyente de los valores y acciones de las leyes de Puerto Rico, ni habiendo estas leyes dádole protección alguna en cuanto a dicha transferencia, sostiene el demandante que la contribución impuesta es nula "írrita" e ilegal, y le priva de su propiedad sin el debido proceso de ley.

La facultad soberana del Estado Libre Asociado de Puerto Rico de imponer y cobrar contribuciones para su subsistencia y demás fines públicos y sociales no tiene más limitaciones que las de su propia Constitución, y ciertas otras disposiciones de la Ley de Relaciones Federales con Puerto Rico, que no están envueltas en este caso. (¹) Dispone la Constitución del Estado Libre Asociado que ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes—Art. II Sec. 7—; y la Sec. 3 del Art. VI, —que las reglas para imponer contribuciones serán uniformes en Puerto Rico—. Al considerar el planteamiento del demandante a la luz de la garantía que le ofrece la Constitución del Estado Libre Asociado de no ser privado de su propiedad sin debido proceso de ley, están en orden como garantías mínimas, aquellas normas de máxima protección sentadas por el Tribunal Supremo de los Estados Unidos

---

(¹) Ley Pública 600, Art. 4, 64 Stat. 319.

ante planteamientos constitucionales similares. La razón es obvia. (²)

El demandante invoca *Freeman* v. *Srio. de Hacienda*, posición que aquí asume. *State Tax Comm'n* v. *Aldrich*, 316 82 D.P.R. 307 (1961) como su fundamental apoyo para la U.S. 174; *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435 y *Treichler* v. *Wisconsin*, 338 U.S. 251, las otras tres decisiones que cita en su memorando sometiendo el caso, como veremos en nada le ayudan. En el caso de *Freeman* se trataba del traspaso *mortis causa*, fuera de Puerto Rico, de bienes muebles incorpóreos—certificados de acciones de capital corporativo—de un ciudadano del Estado de Michigan allí domiciliado y residente, a otro ciudadano de Michigan, también allí domiciliado y residente. En lo que respecta a la ciudadanía de Puerto Rico, fue un traspaso entre extran-

---

(²) La Ley Pública 87–189 de 30 de agosto de 1961, 75 Stat. 417, 28 U.S.C.A. § 1258, establece una jurisdicción para la revisión por el Tribunal Supremo de los Estados Unidos de las sentencias finales de este Tribunal, idéntica a la establecida para revisar las sentencias finales de los Estados—28 U.S.C.A. § 1257—. Estatuye la Sec. 1258 en su texto original:

"Final judgments or decrees rendered by the Supreme Court of the Commonwealth of Puerto Rico [—Sec. 1257—by the highest court of a State in which a decision could be had] may be reviewed by the Supreme Court as follows:

(1) By appeal, where is drawn in question the validity of a treaty or statute of the United States and the decision is against its validity.

(2) By appeal, where is drawn in question the validity of a statute of the Commonwealth of Puerto Rico on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of its validity.

(3) By writ of certiorari, where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of the Commonwealth of Puerto Rico is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution, treaties, or statutes of, or commission held or authority exercised under, the United States. Added Pub. L. 87–189 § 1, Aug. 30, 1961, 75 Stat. 417."

jeros. Los certificados de acciones no tenían tampoco presencia física en Puerto Rico.

Se sostuvo la facultad de Puerto Rico para cobrar, en esa situación, la contribución de donaciones que impone la Ley Núm. 303 de 1946 sobre esa parte del caudal que constituían dichos certificados, fundamentalmente, por razón de que eran certificados de acciones del capital corporativo de una corporación organizada bajo las leyes de Puerto Rico, que aquí hacía negocios. Se dijo, haciéndose referencia a ciertas disposiciones aplicables de tipo *regulador* de la Ley de Corporaciones de 1911—véase escolio 7, 82 D.P.R. a la pág. 318,— que no cabía duda de que la transferencia de las acciones a favor de la allí contribuyente se efectuaría de acuerdo con la ley local sobre corporaciones privadas, y habríamos de presumir que el *registro* del traspaso de las acciones se haría aquí, de acuerdo con la Ley corporativa de 1911 (págs. 317 al final—318). (³)

La Corte de Apelaciones sostuvo la imposición en el caso de *Freeman, Freeman* v. *Ramon Noguera*, 299 F.2d 767 (1st. Cir. 1962), con esta breve expresión y cita (pág. 768):

"La apelante es la viuda y única heredera del causante. Ella y el causante residieron en todo momento en el Estado de Michigan, donde las acciones cuyo traspaso se intenta tributar estaban físicamente situadas. El poder constitucional de Puerto Rico para imponer esta exacción por muerte es incuestionable. *State Tax Commission of Utah* v. *Aldrich*, 1942, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358."

El caso que ahora nos ocupa envuelve un distinto factor fundamental y principalísimo a la cuestión constitucional

---

(³) La referencia es al Art. 20 de la Ley de Corporaciones de 1911, al efecto de que toda corporación organizada bajo la misma llevaría en su oficina principal aquí *registros* de traspasos en que se asentarían las transferencias de acciones, y registros de acciones conteniendo los nombres y direcciones de los accionistas, para ser examinados por cualquier accionista, debiendo el secretario de la corporación certificar al Secretario de Hacienda mensualmente una relación de las transferencias de acciones efectuadas.

300

planteada, el cual es, la ciudadanía de Puerto Rico del demandante Dr. Maristany y su domicilio y residencia aquí permanente. Este factor, sobre el cual ninguna expresión fue preciso hacer en el caso de *Freeman* por cuanto allí no estaba envuelto, y el cual ignora o pasa por alto el demandante en su discusión del problema a pesar de su decidida importancia, obliga a proyectar la cuestión litigiosa hacia otra área de la doctrina constitucional aplicable.

Se ha dicho tiempo ha que el nombre que se le da a una contribución carece de importancia, y la verdadera naturaleza de la misma se fija más bien por su incidencia; y que cuando está en controversia el hecho de si una contribución contraviene derechos constitucionalmente garantizados, no es la forma de la misma, ni su definición o interpretación lo que hace el caso, sino el efecto práctico o las consecuencias de dicha contribución como cuestión de realidad, en su aplicación y funcionamiento. Cf. *Shaffer* v. *Carter*, 252 U.S. 37; *Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U.S. 288; *Richfield Oil Corp.* v. *State Board of Equalization*, 329 U.S. 69; *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435; *Commissioner* v. *Hansen*, 360 U.S. 446, a la pág. 461. Siendo el poder de tributación inherente al Estado mismo y el medio por el cual se distribuyen los costos de su gobierno entre aquellos que disfrutan de sus beneficios, *Welch* v. *Henry*, 305 U.S. 134, 144, las controversias contributivas han de considerarse con el sentido práctico de las realidades envueltas, Cf. *Helvering* v. *F. & R. Lazarus & Co.*, 308 U.S. 252, sin que entren mucho en juego las ficciones o sutilezas legales. Cf. *Tyler* v. *United States*, 281 U.S. 497; *R. C. A.* v. *Gobierno de la Capital*, 91 D.P.R. 416 (1964). Hay que ir siempre en busca de la realidad envuelta.

Veamos qué es en la realidad la imposición aquí hecha. Obviamente no se trata de una contribución territorial sobre propiedad mueble, sea ésta corpórea o incorpórea como

resulta ser la que forma el *"corpus"* del fideicomiso relacionado con este caso. Se considera el valor de la cosa donada sólo como parte de un mecanismo para fijar de manera lógica y razonable el *monto* de la contribución, pero la cosa en sí no se tributa. Se trata claramente de una contribución de naturaleza *personal*, impuesta y cobrada a la persona que pasa a ser un *donatario* por razón de recibir una donación—Secs. 1(b) y 2, Ley Núm. 303—. Tal es la incidencia o evento tributario: *el recibo* de una donación. Según la Sec. 1ra. es el *recibo* por una persona de una cosa en virtud de un acto de liberalidad—Código Civil, ed. 1930, Art. 558; el recibo por ella de propiedad por menos de su justo valor; el recibo del beneficio pecuniario que le produce la condonación total o parcial de una obligación o deuda suya; el recibo del monto de una póliza ordinaria de seguro de vida o póliza dotal si ella no ha pagado las primas; el recibo de cantidades del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y otras agencias y del sistema federal, en concepto de beneficios por defunción de un participante; el recibo directa o indirectamente de bienes en fideicomiso; el recibo de bienes de un causante. ([4])

---

([4]) Compárese la expresión del Legislador al hacer la imposición en la Ley Núm. 303: "Se impondrá y cobrará *al donatario de cada donación tributable, y éste pagará*" . . . "Donatario significa la persona *que recibe* una donación" . . . , con su expresión en la imposición hecha en la Ley Núm. 99 de 1925 que aquélla sustituyó, según fue enmendada en 1936 por la Ley Núm. 72: "Todos los bienes inmuebles en Puerto Rico, y cualquier participación en ellos, pertenecientes a residentes o no residentes en Puerto Rico o fuera de Puerto Rico, todos bienes muebles en Puerto Rico o fuera de Puerto Rico pertenecientes a residentes en Puerto Rico; y todos los bienes muebles en Puerto Rico pertenecientes a personas no residentes en Puerto Rico, que por testamento o abintestato, o por herencia o donación cualquiera efectuada, cuya intención fuera otorgar la posesión, la nuda propiedad o el usufructo después del fallecimiento del donante, se transmitiesen a cualquier persona, sociedad, institución o corporación en fideicomiso o con otro carácter, estarán sujetas a una contribución que más adelante se expresa."

■ Nadie se permitiría cuestionar que el acrecimiento, graciosa y lucrativamente del patrimonio y la riqueza de la persona mediante *el recibo* de una donación constituye un hecho social económico sobre el cual el Estado puede ejercer legítimamente su abarcador poder tributario sobre dicha persona. Es incuestionable también que en el ejercicio de ese poder debe existir desde el punto de vista de las limitaciones constitucionales aplicables, algún vínculo racional entre el Estado que tributa y el sujeto u objeto del tributo.

■ En el caso ante nos, ese vínculo existe. Es la ciudadanía de Puerto Rico del contribuyente Dr. Maristany y su domicilio y residencia permanentes en Puerto Rico antes y al momento mismo de recibir la donación. Esta ciudadanía y domicilio en el orden político es el vínculo por excelencia—comparable al familiar en otro orden—que ata jurídicamente al Estado Libre Asociado con el demandante en el ejercicio de todos sus poderes soberanos, entre ellos el fundamental de imponer tributo, y sujeta al demandante a dichos poderes de soberanía. (5)

---

(5) Aunque por vía sólo de ilustración, y sólo para demostrar cuán fuerte es el vínculo de la ciudadanía en el ejercicio por el Estado de sus poderes políticos, véase: *Cook* v. *Tait* (1924) 265 U.S. 47. El contribuyente era ciudadano de los Estados Unidos, pero tenía su residencia y domicilio *permanente* en Méjico. Se le impuso contribución sobre ingresos obtenidos por él derivados de bienes localizados en Méjico. Tanto los bienes y el ingreso, como la persona del contribuyente mismo se hallaban permanentemente fuera de la jurisdicción territorial de los Estados Unidos. El único vínculo era el ser ciudadano.

Sosteniendo la contribución federal impuesta se expresó así el Tribunal Supremo de los Estados Unidos después de referirse al poder contributivo de los Estados Unidos como Nación y al de los Estados como tales:

"En otras palabras, se declaró el principio que el gobierno, por su naturaleza misma, beneficia al ciudadano y su propiedad, donde se encuentre, y por lo tanto tiene el poder de hacer el beneficio completo. O, para expresarlo de otra manera, la base del poder para tributar no se hizo ni puede hacerse depender del *situs* de la propiedad en todos los casos, esté en o fuera de los Estados Unidos, ni fue ni puede hacerse depender del

■ En *Lawrence* v. *State Tax Comm.* (1932), 286 U.S. 276, caso que en sus 35 años se cita con suma frecuencia por el propio Tribunal Supremo como ilustrativo y orientador en estas controversias, se atacó por un ciudadano y residente de Mississippi la contribución que le impuso dicho Estado sobre ingresos que él derivó de actividades realizadas totalmente fuera de Mississippi. Expresó el Juez Stone, sosteniendo el tributo: (pág. 279)

"La obligación de uno domiciliado dentro de un Estado de pagar allí contribuciones, surge de acción unilateral del gobierno del Estado en el ejercicio del más plenario de los poderes del Estado, el de crear rentas para afrontar los gastos de gobierno y distribuir sus cargas ecuánimemente entre aquellos que disfrutan de sus privilegios. *Por lo tanto, el domicilio por sí mismo establece una base de tributación.* El disfrute del privilegio de la residencia dentro del Estado, y el derecho concomitante de invocar la protección de sus leyes *son inseparables* de la responsabilidad de compartir los costos de gobierno. [citas] . . .

La presente contribución se ha definido por la Corte Suprema de Mississippi como un impuesto y no como una contribución sobre la propiedad, [citas] pero al pasar sobre su constitucionalidad sólo nos atañe su operación práctica, no su definición o la forma precisa de las palabras descriptivas que se le pueden aplicar." [citas]

Continúa el Juez Stone: (pág. 281)

"Es suficiente, en lo que concierne al poder constitucional del Estado para imponerla, que la contribución se imponga por Mississippi a sus propios ciudadanos en relación con el *recibo y disfrute* de ingreso derivado de la gestión de negocios, sin importar el sitio en que se lleve a cabo. La contribución, que se

---

domicilio del ciudadano, esté en o fuera de los Estados Unidos, *sino sobre su vínculo como ciudadano a los Estados Unidos y el vínculo de éste a aquél como ciudadano.*" (Énfasis puesto.)

Somos conscientes que para los distintos Estados el Tribunal Supremo ha cualificado en adición otros requisitos necesarios a los problemas de ajuste de intereses políticos y económicos característicos del sistema federado.

reparte según la capacidad del contribuyente para soportarla, *se cimenta en* la protección que se le da por el Estado al *receptor* del ingreso, en su persona, en su derecho *a recibir el ingreso, y en el disfrute del mismo después de recibido.* Estos son derechos y privilegios concomitantes *a su domicilio en el Estado,* y guarda con ellos relación legal directa el *interés económico realizado* con el *recibo* del ingreso o representado por el poder de controlarlo." (Énfasis puesto.)

*Curry* v. *McCanless* (1939), 307 U.S. 357, presenta el caso de una residente y domiciliada de Tennessee que transfirió en fideicomiso a una corporación de Alabama, como fiduciaria, cierta propiedad incorpórea—acciones y bonos—con instrucción de administrar el fideicomiso y pagarle durante su vida el ingreso de éste. Por disposición testamentaria a su muerte el referido fideicomiso pasó a la misma corporación fiduciaria que lo tenía, para beneficio de su esposo e hijos. Descartando la teoría de que la Enmienda XIV fija un solo "situs" de los bienes incorporales para su tributación, y sosteniendo el derecho tanto de Tennessee como también el de Alabama para imponerle una contribución al fideicomiso, no obstante el hecho de que siempre éste estuvo situado físicamente en Alabama, dijo el Tribunal Supremo después de referirse a aquellas otras normas que rigen la tributación por el Estado de la propiedad corporal: (pág. 365)

"Muy distintas consideraciones, teóricas y prácticas, se aplican a la tributación de bienes incorporales, esto es, derechos que no están relacionados a las cosas físicas. Tales derechos no son sino *relaciones entre personas,* naturales o corporativas, que la ley reconoce concediéndoles ciertas sanciones ejercitables en las cortes. El poder del gobierno sobre ellos y la protección que les ofrece no puede ejercerse mediante el control de una cosa material. Sólo pueden hacerse efectivos a través *del control sobre, y la protección que concede, a aquellas personas* cuyas relaciones son el origen de tales derechos. [citas] Obviamente, como fuentes de riqueza real o potencial—lo cual es una medida propia de cualquier contribución impuesta a la propiedad o a su

ejercicio—no pueden disociarse *de las personas de entre cuyas relaciones se derivan.* [citas] Esto en ningún sentido son ficciones. Son realidades indisputables.

"El poder de tributar 'es una incidencia de soberanía, y es co-extensivo con aquello del cual es un incidente. Todo sujeto sobre el cual se extiende el poder soberano del Estado, es objeto de tributación, pero aquellos sobre los que no se extiende están, a tenor de los más firmes principios, exentos de tributación'. *McCulloch* v. *Maryland,* 4 Wheat. 316, 429. . . . Desde el principio de nuestro sistema constitucional, *el dominio sobre la persona en el sitio de su domicilio,* y su deber allí, común a todos los ciudadanos, de contribuir al sostenimiento del gobierno se ha considerado que proporciona una base constitucional adecuada para imponerle una contribución por el uso y disfrute de derechos incorporales medida por su valor." (Énfasis puesto.) Véase: *Graves* v. *Elliott,* 307 U.S. 383.

Quizás no fuera necesaria una más prolongada exposición a no ser porque el demandante, en la discusión del problema, aparenta no darle signficado alguno o importancia a este hecho tan básico de la ciudadanía de Puerto Rico y domicilio del Dr. Maristany en la impugnación constitucional que hace a la contribución que se le impusiera. Analizaremos brevemente otras decisiones que dan el cuadro constitucional completo.

Kentucky impuso contribución sobre la propiedad a una corporación de dicho Estado como dueña de barcos que navegaban entre Nueva York, y otros puertos estatales, y Cuba. Los barcos estaban matriculados en Nueva York y este nombre aparecía en la popa. La propiedad siempre estuvo fuera de la jurisdicción territorial de Kentucky. Sosteniéndose esta contribución en *Southern Pacific Co.* v. *Kentucky* (1911), 222 U.S. 63, dijo el Tribunal Supremo: (pág. 68)

"La antigua máxima que asigna a los bienes corporales al igual que a los incorporales el *situs* de su dueño para propósitos contributivos, tiene su fundamento en la protección *que el dueño recibe del gobierno de su residencia,* y la excepción a dicho principio se basa en la teoría de que si el dueño por su propia acción, da a dicha propiedad una localización *permanente*

en otra parte, el *situs* del domicilio debe ceder al *situs* real y al resultante dominio de otro gobierno . . . ."

Y luego: (pág. 76)

"La legalidad de la contribución no ha de medirse por el beneficio recibido por el contribuyente, aunque la igualdad de cargas es la norma general que se desea obtener. Protección y tributación no son necesariamente obligaciones correlativas, ni exacta igualdad lograda de la carga, por mucho que sea deseable. El poder de tributación es uno con el cual debe interferirse por motivos de injusticia sólo cuando ha habido un abuso tan flagrante que deba ser remediado bajo algún principio afirmativo constitucional."

En una situación en que Kentucky le impuso a un domiciliado suyo contribución sobre los depósitos bancarios que aquél tenía en Missouri, y que eran producto de los negocios de dicha persona en este último Estado, el Juez Holmes, al sostener la contribución, expone en *Fidelity & Columbia Tr. Co.* v. *Louisville* (1917), 245 U.S. 54, a la pág. 58:

"En tanto concierne a este fallo, podemos aceptar sin argumentación que los depósitos de Missouri pudieron ser tributados en este Estado, bajo las decisiones de esta Corte. [citas] Pero responsabilidad tributaria en un Estado necesariamente no excluye responsabilidad tributaria en otro. La presente contribución es una *sobre la persona,* como se desprende de la forma del pleito, y se impone, puede presumirse, *por las ventajas generales de vivir dentro de la jurisdicción.* Estas ventajas, si el Estado así lo prefiere, pueden medirse más o menos con referencia a la riqueza de la persona tributada. A menos que por autoridad se declarare ser ilegal, nada vemos que impida al Estado el tomar en cuenta los créditos de una persona. Lejos de haberse declarado ilegal, se ha decidido por esta Corte que el que el Estado fije la contribución por el valor de tales créditos y acciones, no exentos por autoridad superior, es un asunto del Estado, a no ser intervenido por los Estados Unidos y, por ende, que un Estado puede tributar a una persona por la deuda que le debe un residente de otro Estado." (citas)

En *Burnet* v. *Wells* (1933), 289 U.S. 670, se tributó a una persona el ingreso de un fideicomiso que de acuerdo con la constitución del mismo, debía ser usado por el fiduciario para pagar primas de seguros a favor de otras personas. Dice el Juez Cardoza, sosteniendo la contribución: (pág. 678)

"La responsabilidad no tiene que descansar en el disfrute por el contribuyente de todos los privilegios y beneficios disfrutados por el dueño más favorecido en un momento determinado, o sitio. [citas] El gobierno, al mirar hacia los sujetos propios de tributación, no está obligado por la tradicional clasificación de intereses o propiedades. Puede tributar no sólo propiedad, sino cualquier derecho o privilegio ingrediente de la propiedad. . . . 'A la tributación no le concierne tanto los refinamientos de título como el dominio efectivo de la propiedad tasada; el beneficio real por el cual se paga la contribución.' " (citas)

La discusión en *N.Y. ex rel. Cohn* v. *Graves* (1937), 300 U.S. 308 es por demás ilustrativa. El problema era si un Estado, Nueva York, podía constitucionalmente tributar a su residente por ingresos obtenidos por éste derivados de rentas de propiedad fuera del Estado, y de intereses de bancos situados fuera asegurados con hipotecas sobre inmuebles también fuera. Sosteniendo la contribución, se dice: (pág. 312–313)

"Que el recibo de ingresos por un residente del territorio de la soberanía tributante constituye un evento tributable, está generalmente reconocido. *El domicilio mismo provee una base para tal tributación.* El disfrute del privilegio *de residir* en el Estado y el derecho concomitante *de invocar* la protección de sus leyes son *inseparables* de la responsabilidad de compartir los costos de gobierno. '*Las contribuciones es lo que pagamos por una sociedad civilizada*' " . . . .
. . . "Ni el privilegio, ni la carga se afectan por la naturaleza de la fuente de donde se deriva el ingreso."

Véanse: *Guaranty Trust Co.* v. *Virginia* (1938), 305 U.S. 19, donde se sostuvo una tributación parecida por el Estado

de domicilio y residencia, Virginia, no obstante que el mismo ingreso se tributó por Nueva York en manos del fiduciario. (pág. 23) "Aquí el objeto tributado fue el *recibo* de ingreso en Virginia por un ciudadano allí residente". *Texas* v. *Florida* (1939), 306 U.S. 398 con una amplia discusión sobre el concepto de domicilio.

Rhode Island impuso contribución sobre la propiedad a la mitad de un fideicomiso de bienes incorpóreos situado fuera del Estado y poseído conjuntamente por dos fiduciarios, uno residente de dicho Estado y el otro extranjero. Expresa el Juez Reed a la pág. 492 en *Greenough* v. *Tax Assessors* (1947), 331 U.S. 486:

"Los precedentes que han sostenido que es inconstitucional el que un Estado tribute propiedad corporal de un residente *permanentemente* situada más allá de sus fronteras, no se han aplicado a bienes incorporales en que los documentos de interés propietario se encuentran más allá de la jurisdicción tributante o en que los derechos incorpóreos son meras promesas de un no residente sin documentos. . . . Un Estado depende de sus *ciudadanos* para sus recursos. La riqueza se ha aceptado ha tiempo como una medida justa de imposición. Como medio práctico de allegar rentas los Estados, sin restricción alguna de la Constitución federal, han acostumbrado tributar propiedad incorpórea 'dondequiera que realmente se hallare o depositare', que pertenezca *a sus ciudadanos* e independientemente de la localización del deudor. En tanto un Estado elige tributar el valor de un bien incorporal como parte de la riqueza del contribuyente, la localización de las evidencias de su propiedad no tiene importancia . . . ."

(pág. 493) "Esta *relación* estrecha entre el bien incorpóreo y su dueño ofrece una base adecuada de tributación en *su dueño* por el Estado *de su residencia* contra cualquier ataque de violación de la Enmienda Catorce. El Estado de residencia del dueño le provee los beneficios y la protección inherentes a la existencia de un gobierno organizado. . . . Es el *sitio* en donde él ejercita ciertos privilegios de ciudadanía y disfruta la protección del gobierno de su domicilio."

(pág. 490) "A los fines de la tributación de *aquellos residentes dentro de sus fronteras,* Rhode Island tiene poder soberano no impedido por limitación alguna, excepto aquellas que surgen de la Constitución." (Énfasis puesto.)

*Ott* v. *Mississippi Barge Line* (1949), 336 U.S. 169, en que se sostiene una contribución impuesta por Mississippi a corporaciones extranjeras en el comercio interestatal explotadoras de un negocio de carga en barcazas que pasaban por dicho Estado. Las barcazas estaban matriculadas en puertos fuera de Mississippi y se detenían en este Estado sólo para cargar y descargar. La contribución se impuso en la proporción en que las millas de viaje dentro del Estado tenían con el millaje total recorrido en dicho comercio interestatal. Sosteniéndose la contribución se dice a la pág. 174: "En lo que al debido proceso concierne, la única cuestión es si la contribución en su efecto práctico, tiene *relación* a las oportunidades, beneficios o protección conferidos o provistos por el Estado tributante. [cita]" Véanse: *Northwest Airlines* v. *Minnesota,* 322 U.S. 292; *Braniff Airways* v. *Nebraska Board,* 347 U.S. 590.

*Bode* v. *Barrett* (1953), 344 U.S. 583: (pág. 585)

"No se ha demostrado por ninguno de los apelantes que la contribución no guarda una relación razonable al uso que hace de las carreteras en sus operaciones dentro del Estado. . . . El poder del Estado para tributar, básico a su soberanía, *está restringido sólo si en substancia y efecto es el ejercicio de un poder diferente prohibido* [cita] *como por ejemplo la tributación de un privilegio protegido por la Enmienda Primera."* (Douglas) (Énfasis puesto.)

En *Central R. Co.* v. *Pennsylvania* (1962), 370 U.S. 607, Pennsylvania impuso a una corporación doméstica contribución sobre todos sus vagones de carga. Parte de estos vagones se usaban por una corporación en New Jersey en las vías de ésta, y por otras corporaciones a través del país. Al sostener la contribución que incluía estos vagones fuera de la juris-

dicción y no usados en Pennsylvania, dice el Juez Harlan: (pág. 612)

"Ni tampoco la Cláusula del Debido Procedimiento limita el poder contributivo del Estado domiciliario a aquella proporción del valor de la propiedad tasada que equivalga a la fracción del año contributivo en que la propiedad se encuentra dentro de sus límites. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U.S. 194, sólo sostuvo que la Cláusula del Debido Procedimiento prohibía una contribución real por el domicilio del dueño sobre propiedad corpórea *permanentemente* [énfasis en el original] situada en algún otro Estado. [cita] *Northwest Airlines, Inc.* v. *Minnesota,* 322 U.S. 292, reafirmó el principio establecido en casos anteriores que la propiedad corpórea sobre la cual no se haya fijado un *situs* tributable en otro sitio, puede tributarse en todo su valor por el domicilio de su dueño. [citas] Si la propiedad no ha tenido el suficiente contacto con Estados distintos al del domicilio de su dueño para convertir a cualquiera de dichas jurisdicciones en 'situs tributable' resulta ciertamente apropiado el presumir que el *domicilio* es el único Estado proveyendo las 'oportunidades; beneficios o protección' que el debido procedimiento requiere como requisito necesario a la tributación."

Véase: *Graves* v. *Schmidlapp* (1942), 315 U.S. 657.

*Wisconsin* v. *J. C. Penney Co.* (1940), 311 U.S. 435 y *State Tax Comm'n* v. *Aldrich* (1942), 316 U.S. 174, dos de los tres casos del Tribunal Supremo que invoca el demandante en apoyo de su impugnación son, por el contrario, exponentes fieles de la doctrina constitucional expuesta en las autoridades reseñadas. En *Penney*, se sostuvo la validez de una contribución impuesta por Wisconsin a una corporación de Delaware con sus oficinas principales en Nueva York, por el privilegio de declarar y recibir dividendos de ganancias obtenidas de negocios dentro de Wisconsin. El evento tributable de declarar dividendos se realizó en ese caso fuera de este Estado. Expresó el Juez Frankfurter: (pág. 445)

"El hecho de que una contribución estatal dependa de acontecimientos que ocurran fuera del Estado no destruye el nexo

entre dicha contribución y operaciones en el Estado sobre las que el tributo es una exacción. [citas] Este análisis es meramente una reafirmación del enfoque clásico de esta Corte hacia el poder contributivo de los Estados. [cita] . . . Nada puede ser menos útil que el que las cortes vayan más allá de las *extremadamente limitadas* restricciones que la Constitución impone a los Estados y se metan, en forma meramente negativa, en el delicado proceso de establecer la política fiscal. Debemos estar en guardia contra el aprisionar el poder tributario de los Estados dentro de fórmulas que no demanda la Constitución y que sólo representan generalizaciones judiciales que sobrepasan las circunstancias específicas que pretenden resumir." (Énfasis puesto.)

El caso de *Aldrich* es una franca reafirmación de *Curry* v. *McCanless*, ante, y consagra definitivamente, al revocar a *First National Bank* v. *Maine*, 284 U.S. 312, y en efecto restituir en su fuerza jurídica el criterio mayoritario de Holmes en *Blackstone* v. *Miller* (1903), 188 U.S. 189, ([6]) la facultad del Estado del domicilio y residencia de una persona para tributarla en su relación con bienes incorporales, aunque por otras incidencias, otro Estado pueda tributar también en cuanto a los mismos.

Finalmente, *Treichler* v. *Wisconsin*, 338 U.S. 251, el otro caso citado por el demandante, tampoco le ayuda. El Tribunal Supremo opinó que una contribución según fue aplicada por la Corte Suprema de Wisconsin en ese caso era una contribución sobre la propiedad medida en parte por el valor de propiedad *corporal* situada en otros Estados, y en tanto así se aplicaba, era contraria al debido procedimiento de la Enmienda XIV. Este caso sigue la doctrina clásica que no permite a un Estado tributar propiedad *corporal* con *situs* permanente fuera de su jurisdicción. En nada afecta el de autos, en que se trata de un interés o relación en bienes incorporales.

---

([6]) Revocado por *Farmers Loan Co.* v. *Minnesota*, 280 U.S. 204.

■ La doctrina constitucional reseñada no deja duda alguna que el Estado del domicilio y residencia de una persona tiene con primacía, por razón sólo de tal domicilio y residencia, el poder ilimitado de tributarla aun cuando en determinadas circunstancias otro Estado pudiera tributarla también; y que el Estado del domicilio y residencia no tiene otras limitaciones constitucionales bajo la Cláusula del debido procedimiento que su impedimento para tributar a un residente y domiciliado por la propiedad *corporal,* mueble o inmueble, que posea y esté localizada *permanentemente* fuera de sus fronteras territoriales o, cuando, según lo expresó el Juez Douglas en *Bode* v. *Barrett,* ante, la tributación es "en substancia y efecto el ejercicio de un poder diferente prohibido, como por ejemplo la tributación de un privilegio protegido por la Enmienda Primera".

■ En el caso ante nos el estatuto es claro. Por su expreso lenguaje impone un tributo a la persona que recibe una donación. No impone tributo al donante por el acto de éste de transferir bienes, o derechos, sino al *donatario* por el privilegio de recibirlos. *Veve* v. *Srio. de Hacienda,* 78 D.P.R. 731, 735 (1955) ; *Descartes, Tes.* v. *Tribl. de Contribuciones,* 79 D.P.R. 135, 138 (1956), aplicando la Ley de 1925 que no contenía un lenguaje en la imposición al donatario tan preciso como la Ley Núm. 303; *Silva* v. *Srio. de Hacienda,* 86 D.P.R. 332, 341 (1962) : "El método que aquí prevalece no es el de la contribución sobre el derecho a transferir la totalidad de la masa hereditaria, sino el de la tributación sobre el derecho o privilegio *de recibir* su participación líquida e individual cada heredero" . . . . Así se ha interpretado también ante estatutos que distinto al nuestro, no mencionan específicamente al donatario en la imposición y hablan de transferencia. Cf. *State* v. *Wagner,* (Minn.) 1951, 46 N.W.2d 676; *McLaughlin* v. *Green,* (Conn.) 1949, 69 A.2d 289; *Whorff* v.

*Johnson*, (Me.) 1948, 58 A.2d 553; *Re Kohrs*, (Mont.) 1948, 199 P.2d 856.

La imposición en forma directa al donatario en nuestro estatuto no deja lugar a duda del evento tributable, aparte de que bajo nuestra ley no siempre ha de ocurrir una transferencia, como en el caso de la condonación de una deuda, o del recibo del beneficio de una póliza de seguro de vida o póliza dotal o, en el caso del recibo del beneficio de muerte de un participante en un sistema de retiro. Compárese en otro sentido: *Sucn. S. Shefftz* v. *Srio. de Hacienda*, 93 D.P.R. 888 (1967).

 Si se sostuviera la contención del demandante, habría que sostener igualmente que Puerto Rico no tiene facultad constitucional para tributar a un ciudadano suyo domiciliado y residente por la ganancia que recibe derivada de negocios realizados fuera o de bienes muebles o inmuebles permanentemente situados fuera de su jurisdicción territorial, bajo la teoría de que a tales negocios o bienes Puerto Rico no le ofrece protección o garantía alguna.[7] Decisivamente se ha resuelto que existe tal facultad constitucional. *Lawrence* v. *State Tax Comm.*, ante, y casos posteriores citados. Decir que Puerto Rico no le ofrece nada al contribuyente a cambio del tributo que le cobra es pretender ignorar el hecho que Puerto Rico le ofrece al demandante, un ciudadano domiciliado y residente, las ventajas generales y beneficios de vivir dentro de su jurisdicción bajo un gobierno organizado que le protege su persona y sus intereses y el disfrute de los bienes que recibe relacionados con el tributo.

Enjuiciada la contribución impuesta en las circunstancias de este caso a la luz de la cláusula del debido procedimiento de ley de la Constitución del Estado Libre Asociado, tomada ésta según ha sido aplicada por el Tribunal Supremo

---

[7] Ley de Contribuciones sobre Ingresos, Ley Núm. 91 de 1954, Sec. 22(a) y (b)(8); Sec. 116(a)(1) y (2).

de los Estados Unidos en situaciones semejantes, la contribución en litigio es claramente constitucional.

*La Sala de San Juan del Tribunal Superior declaró sin lugar la demanda del contribuyente. Su fallo será confirmado.*

El Juez Asociado Señor Blanco Lugo no intervino.