Francisco Levy, Hijo, Inc., apelante, *v.* Municipio de Manatí, apelado.

Número: AC-1999-28 Resuelto: 12 de junio de 2000

*José Luis Vilá Pérez*, abogado de la parte apelante; *José Enrique Colón Santana*, abogado de la parte apelada.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El 23 de enero de 1996, la Autoridad de Carreteras y Transportación de Puerto Rico adjudicó subasta a favor de

Francisco Levy, Hijo, Inc. (en adelante Levy) para la construcción de un tramo del Expreso de Diego que discurría por el Municipio de Manatí. Luego de terminada la obra, el Municipio le notificó a Levy una determinación final de deficiencia, en el pago de arbitrios sobre la construcción del proyecto, por la suma de ciento cinco mil ciento noventa y dos dólares ($105,192) más intereses, penalidades y recargos por la cantidad inicial de cuarenta y siete mil trescientos treinta y seis dólares ($47,336). El arbitrio fue calculado conforme a las disposiciones de la Ordenanza Núm. 30, Serie 1994–95, de ese Municipio, ascendiendo al 2.5% del precio del contrato de construcción.

Levy se negó a pagar el arbitrio e instó demanda sobre sentencia declaratoria contra el Municipio de Manatí ante la Sala Superior de Arecibo del Tribunal de Primera Instancia en solicitud de la anulación de la imposición de los arbitrios. El tribunal de instancia dictó sentencia favorable a Levy. Insatisfecho, el Municipio de Manatí apeló al Tribunal de Circuito de Apelaciones y alegó, en lo pertinente al recurso hoy ante nuestra consideración, que erró el tribunal de instancia al resolver que el cobro de arbitrios de construcción constituía una doble tributación prohibida por ley.

El Tribunal de Circuito de Apelaciones revocó; concluyó que el caso de marras no es uno de doble tributación, pues la Asamblea Legislativa facultó a los municipios para que, además de imponer patentes sobre el monto del volumen de negocios llevados a cabo por una entidad dentro de su municipio, pudiera también imponer arbitrios de construcción sobre el costo total o el valor de toda obra de construcción, efectuada dentro de los límites municipales. Ello implica, según el Tribunal de Circuito de Apelaciones, que quien se dedique a la industria de la construcción en Puerto Rico tiene que incluir en su declaración de patente municipal, según lo requieran las ordenanzas pertinentes, el valor de la obra además de pagar un arbitrio de cons-

trucción, si así lo ha requerido el municipio mediante ordenanza a esos efectos, que puede extenderse sobre todo el costo de la obra al tipo impuesto en las respectivas ordenanzas municipales, siempre que el mismo sea razonable.

De esta sentencia Levy recurrió ante este Tribunal, alegando que erró el tribunal apelativo intermedio al determinar que el Municipio tiene facultad para imponer el arbitrio de construcción computado sobre todos los costos de construcción, en violación a la prohibición expresa de la Sec. 2004 del Código de Rentas Internas de Puerto Rico de 1994 (13 L.P.R.A. sec. 9004) y en abierta contradicción con lo decidido por este Tribunal en *San Miguel & Cía. v. Diez de Andino, Tes.*, 71 D.P.R. 344 (1950).[1]

Para Levy no cabe discusión sobre el hecho de que un municipio tiene autoridad suficiente para imponer un arbitrio de construcción además de la patente municipal sobre el proyecto; esto es, Levy *admite* que el Municipio tiene tal facultad, pero acentúa que ésta *no* es la controversia planteada en el caso de marras, *ni* la razón para decidir del Tribunal de Primera Instancia. Argumenta Levy que dicho foro judicial lo que determinó fue que la Sec. 2004 del Código de Rentas Internas de Puerto Rico de 1994, ante, prohíbe a los municipios de Puerto Rico gravar con un arbitrio local cualquier artículo sujeto a contribución bajo la ley estatal.

A esos efectos, argumenta Levy que computar un arbitrio de construcción basado en el costo total de la obra equivale en parte *a gravar doblemente la partida relativa al costo de materiales de construcción, pues los mismos son objeto directo de tributación estatal.* Levy sostiene que la Sec. 2004 del Código de Rentas Internas de 1994, ante,

---

[1] En ese caso anulamos un arbitrio municipal a base de que constituía un esquema impermisible de doble tributación sobre un mismo evento económico. Luego, en *Las Piedras Const. Corp. v. Mun. de Dorado*, 134 D.P.R. 1018 (1994), dispusimos que, al menos hasta que entrara en vigor la Ley Núm. 93 de 17 de noviembre de 1992 (21 L.P.R.A. sec. 651 *et seq.*), la Ley de Patentes Municipales, vigente desde el 1974, no lo autorizaba.

requiere que el Director de Finanzas municipal *deduzca*, de la suma de todos los costos incurridos en la construcción de la obra, el costo de los materiales usados o consumidos en la misma a fin de determinar el arbitrio a pagar.

Expedimos el recurso. Estando en posición de resolver el mismo, procedemos a así hacerlo.

## I

En la Constitución del Estado Libre Asociado de Puerto Rico se dispone que "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido".[2] Queda claro, entonces, que los municipios no tienen un poder inherente, independiente del Estado, para imponer contribuciones.[3] En atención a dicho decreto constitucional la Asamblea Legislativa ha aprobado varias leyes que regulan la facultad municipal para recaudar impuestos. Entre estas leyes contamos con la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, tal como fue aprobada en 1991, que concedía el poder a los municipios para:

> ... imponer y cobrar contribuciones o tributos por los conceptos y en la forma que a continuación se establece:

> . . . . . . . .

---

[2] Art. VI, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 401.

[3] Valga aclarar que en Puerto Rico no existe una prohibición constitucional a la doble tributación; sin embargo, la intención legislativa imponiéndola debe ser clara y explícita, ya que nunca se presume. *Las Piedras Const. Corp. v. Mun. de Dorado*, 134 D.P.R. 1018 (1994). Hemos dicho que estamos ante un caso de doble tributación cuando el arbitrio recae sobre la misma propiedad, es impuesto por la misma entidad gubernamental, durante el mismo período contributivo y, para el mismo fin. *Monllor & Boscio, Sucrs. v. Sancho Bonet, Tes.*, 61 D.P.R. 67, 69 (1942). Sin embargo, el examen de estos indicadores no es el método exclusivo para determinar si existe o no doble tributación. Deberá observarse el efecto real, práctico-económico, de la imposición del arbitrio. Véanse: *Sucn. Giusti v. Tribl. de Contribuciones*, 70 D.P.R. 117 (1949); *San Miguel & Cía. v. Diez de Andino, Tes.*, 71 D.P.R. 344 (1950).

(d) Imponer y cobrar contribuciones, derechos, licencias, *arbitrios de construcción* y otros arbitrios e impuestos, *tasas y tarifas razonables* dentro de los límites territoriales del municipio, *compatibles con las leyes del Estado Libre Asociado de Puerto Rico*, incluyendo, sin que se entienda como una limitación, por el estacionamiento en vías públicas municipales; por la apertura de establecimientos comerciales, industriales y de derribo de edificios; por la ocupación de vías públicas municipales y por el recogido y disposición de desperdicios.[4] (Énfasis suplido.)

La letra de la ley era clara y tajante en cuanto al poder concedido a los municipios para cobrar arbitrios sobre las obras de construcción dentro de sus límites territoriales. La gran limitación al poder impositivo municipal, reconocido en la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, era el requisito obvio y expreso en la ley de que la contribución fuera compatible con las leyes del Estado Libre Asociado de Puerto Rico. El Código de Rentas Internas de 1994, *cuya aprobación es posterior a la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, pero anterior a la enmienda del citado Art. 2.002 de la Ley de Municipios Autónomos del Estado Libre ·Asociado de Puerto Rico de 1991*, por su parte, en la Sec. 2004[5] dispone que:

*A partir de la fecha de vigencia de esta parte ningún municipio o división administrativa del Gobierno del Estado Libre Asociado de Puerto Rico podrá imponer o recaudar ningún arbitrio local sobre cualquier artículo sujeto al pago de impuesto bajo las disposiciones de esta parte.* Se *exceptúa* de esta disposición la contribución sobre el volumen de negocio autorizada por *las secs. 651 et seq. del Título 21, conocidas como "Ley de Patentes Municipales"*, cuya imposición por los municipios queda expresamente autorizada, debiendo incluirse en el volumen de negocios las operaciones mercantiles sobre los artículos

---

[4] Art. 2.002 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4052 (ed. 1995)).

[5] 13 L.P.R.A. sec. 9004.

gravados por esta parte. No obstante cuando la aplicación de la Ley de Patentes Municipales, conjuntamente con la aplicación de esta parte, produzca una situación contributiva insostenible por infringir alguna prohibición constitucional, si dicha situación resulta constitucional mediante la imposición y cobro de uno solo de los impuestos, prevalecerá la contribución estatal. (Énfasis suplido.)

Es evidente que el Código de Rentas Internas pretendió exceptuar de la imposición de arbitrios municipales a todo artículo o actividad gravada por reclamos contributivos estatales. La letra de la Sec. 2004 de ese Código aprobado en 1994, ante, y la cual sigue vigente, decreta tajantemente que "[a] partir de la fecha de vigencia" de dicho subtítulo "ningún municipio" "podrá imponer o recaudar ningún *arbitrio* local sobre cualquier artículo sujeto al pago de impuesto" (énfasis suplido) bajo las disposiciones de dicho Código. Tan tajante es la prohibición que dicha sección expresamente consigna la *única excepción* a la regla: queda vigente lo dispuesto en la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, según enmendada, 21 L.P.R.A. sec. 651 *et seq.*, sobre la autorización para cobrar patentes sobre el "volumen de negocios", en cuyo concepto se incluyen las operaciones mercantiles sobre los artículos ya gravados por la ley estatal.

En fin, la ley vigente al momento de perfeccionarse el contrato aquí en controversia permitía a los municipios cobrar patentes por obras de construcción basados en el montante del "volumen de negocios", aunque incidentalmente se incurriese en una exigencia de doble tributación en el cobro de patente. Siendo así, si en el caso que nos ocupa, en lugar de tratarse del cobro de arbitrios de construcción, se tratase de patentes por negocio de construcción, el monto de la patente podría legítimamente recaer sobre el volumen de negocio; incluyéndose lo gastado en materiales de construcción en el cálculo de dicho volumen de negocio sin importar el hecho de que sobre dichos materiales —entre

los que se cuenta el cemento— se hubiese pagado un impuesto estatal.

■ Ello es así pues la Ley de Patentes Municipales define el término "volumen de negocios" como "los ingresos brutos que se reciban o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio ...".[6] Pudiera decirse que la Ley de Patentes Municipales era, y es, una ley privilegiada en el sentido de ser *una excepción* al principio de prohibición de doble tributación. Tal era la situación de las patentes al momento de perfeccionarse el contrato del caso de marras y tal sigue siendo la situación en la actualidad. *Sin embargo, el caso que nos ocupa es distinto al cobro de patentes: el mismo no se rige por la Ley de Patentes Municipales.*

En el caso de marras, Levy impugna la acción por parte del Municipio de Manatí, de imponer *arbitrios* sobre el costo total de una obra de construcción acordada en enero de 1996, incluyéndose en ese cómputo el costo de los materiales. No se trata aquí de impugnar el cobro de *patentes* sobre el "volumen del negocio" de construcción, lo cual estaba y está expresamente protegido por el Código de Rentas Internas, aun para permitir la doble tributación. El Código de Rentas Internas, desde 1994, era claro al prohibir la doble tributación mediante la forma de *arbitrios municipales.*

De ahí que cuando la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, en 1991, al referirse al poder de los municipios para imponer y cobrar arbitrios de forma compatible con las leyes del Estado Libre Asociado, prohibía que los municipios impusiesen una doble tributación en forma de arbitrios. No existía en la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, ni en el Código de Rentas Internas,

---

[6] 21 L.P.R.A. sec. 651(a).

para la fecha de 23 de enero de 1996, ningún trato legislativo preferencial sobre los arbitrios municipales en lo respectivo al asunto de la doble tributación. La norma general de la prohibición de la doble tributación regía para entonces.

■ No fue sino hasta el 6 de septiembre de 1996, que se aprobaron enmiendas a la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 y mediante la Ley de Arbitrios Municipales, Ley Núm. 199 de 6 de septiembre de 1996 (21 L.P.R.A. secs. 4001(bb) y (cc), 4052(d) y 4057), se hizo constar, en lo pertinente, que:

*Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el costo en que se incurra para realizar el proyecto luego de deducirle el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales.*[7] (Énfasis suplido.)

■ La definición de "costo total" de la obra de construcción,[8] según la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 enmendada el *6 de septiembre de 1996*, autoriza a incluir en su cómputo el costo de los materiales, tales como el concreto. Sin embargo, no puede ser por virtud de esta ley que el Municipio de Manatí aprobó la Ordenanza Núm. 30, serie 1994–95, bajo cuyo amparo reclama el pago del arbitrio que nos ocupa, pues la ordenanza fue aprobada años antes de que la Legislatura expresamente creara otra excepción a la prohibición de doble tributación. Durante los años 1994 y 1995 ningún municipio, bajo el estado de derecho de entonces, tenía autoridad para imponer un arbitrio que gravase directa o indirectamente un artículo previamente gravado por el Estado. Según esta ordenanza, el constructor en te-

---

[7] 21 L.P.R.A. sec. 4052(b).

[8] Para efectos de esta ordenanza el término "obra de construcción incluye" "[c]ualquier obra de construcción, incluyendo las relacionadas a la infraestructura, llevada a cabo por contratistas privados o particulares [...]".

rrenos municipales vendrá obligado a pagar al municipio por toda obra de construcción en concepto de arbitrios el *2.5% del costo total de la obra.*

 Es justamente en el Código de Rentas Internas que el Estado Libre Asociado impone una contribución sobre todo cemento hidráulico o sustituto de éste fabricado localmente o introducido en Puerto Rico por traficantes o fabricantes locales autorizados por ley, y en el caso del cemento importado para consumo propio por personas que no sean traficantes.[9] Por otra parte, el mismo Código disponía en su Sec. 2005 (13 L.P.R.A. sec. 9005) que se impondrá, cobrará, y pagará un arbitrio sobre el cemento fabricado localmente o introducido en Puerto Rico. Tal impuesto deberá ser pagado, en primera instancia, por el consignatario[10] o por el fabricante en caso de que el artículo sea fabricado en Puerto Rico.[11]

 Esto nos lleva a la conclusión de que, al menos desde que se aprobó el Código de Rentas Internas de 1994 hasta el 6 de septiembre de 1996, dado el caso en que se hubiesen pagado impuestos estatales relativos al cemento hidráulico, esto es, utilizado en una obra, de tenerse que posteriormente calcular el monto del costo total de la obra para fines de tributar sobre él, incluyéndose el costo del cemento ya gravado, al pagar tal contribución se estaría pagando un *segundo tributo* sobre el costo del cemento hidráulico: mediante un impuesto estatal originalmente y mediante un impuesto municipal, en segunda instancia, sobre lo que Levy pagó por el cemento ya gravado. Tal esquema sería contrario al Código de Rentas Internas de

---

[9] Véase 13 L.P.R.A. sec. 9008.

[10] Véase 13 L.P.R.A. sec. 9069.

[11] Íd.

1994 que privaba sobre la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991.([12])

 Es evidente que el Municipio de Manatí actuó de forma contraria a la ley al calcular el arbitrio de construcción incluyendo el monto de los gastos de materiales para establecer su cuantía. Ya hemos dicho que para determinar la legalidad de una contribución, no es relevante su forma, nombre o definición, sino su efecto práctico y consecuencias en su aplicación y funcionamiento. *Las Piedras Const. Corp. v. Mun. de Dorado*, 134 D.P.R. 1018 (1994); *Maristany v. Srio. de Hacienda*, 94 D.P.R. 291, 300 (1967); *C.H. Vehicle Leasing v. E.L.A.*, 107 D.P.R. 94, 101–102 (1978).

No cabe duda de que el juez de instancia actuó correctamente al determinar que tanto el arbitrio de construcción como el arbitrio estatal *afectan la misma actividad económica* que Levy llevó a cabo en el Municipio. Nótese que el contratista de obra es un poseedor de materiales y servicios. Esos materiales, a su vez, están sujetos al arbitrio estatal por disposición expresa de la Sec. 2005 del Código de Rentas Internas, ante. Mediante la imposición del arbitrio de construcción a Levy, computado a base del costo total del proyecto, el Municipio grava los materiales de construcción que se instalarán en la obra. Su claro efecto práctico es imponer un arbitrio adicional a los artículos gravados por la ley estatal, igual que lo hizo el Municipio de San Juan en el caso de *San Miguel & Cía. v. Diez de Andino, Tes.*, ante.

 Resulta forzoso concluir que la imposición del arbitrio de construcción a Levy, mediante la Ordenanza

---

([12]) Claro está, en septiembre de 1996, con posterioridad al perfeccionamiento del contrato de construcción del caso de marras, la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 se enmendó para permitir que el arbitrio de construcción se extendiese sobre el costo total del proyecto, incluyéndose para el cálculo lo gastado en materiales de construcción independientemente de que ya se hubiese tributado sobre ellos.

Núm. 30, serie 1994–1995, del Municipio de Manatí, *es contrario al estado de derecho prevaleciente en Puerto Rico hasta el 6 de septiembre de 1996*. La doble tributación por medio de arbitrios municipales, de artículos de construcción de obra, estaba prohibida por el Código de Rentas Internas. Levy tiene razón.

 Sólo a partir del 6 de septiembre de 1996 podía el Municipio de Manatí imponer arbitrios de construcción basados en el costo total de la obra según definido en la Ley de Arbitrios Municipales, pues el legislador definió claramente ese concepto sin excluir del mismo el costo de los materiales de construcción.[13] Antes de esa fecha los municipios sólo podían imponer arbitrios razonables sobre el costo de la obra, excluyendo del mismo cualquier partida sobre la cual hubiese recaído la imposición de contribuciones estatales.

 Procede, por lo tanto, declarar que la imposición del arbitrio municipal sobre la obra de construcción de Levy basadas en el costo total de la obra sin exclusión de los costos de materiales de construcción es contraria a la ley en vigor al momento de la celebración del contrato entre las partes.[14] Sólo procede el cobro de arbitrios sobre el

---

[13] De hecho, la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, en su Art. 1.003, según enmendado en 1996 (21 L.P.R.A. sec. 4001), aclara, expresamente, que a partir de dicha enmienda no existe impedimento a una doble tributación sobre esta área en Puerto Rico. Es así, pues, la ley ordena que "[e]sta contribución [el arbitrio de construcción municipal] se considerará un acto separado y distinto a un objeto o actividad o cualquier renglón del objeto o actividad, que no priva o limita la facultad de los municipios para imponer contribuciones, arbitrios, impuestos, licencias, derechos, tasas y tarifas. La imposición de un arbitrio de construcción por un municipio constituirá también un acto separado y distinto a [cualquier] imposición contributiva que imponga el Estado, por lo cual ambas acciones impositivas serán compatibles". 21 L.P.R.A. sec. 4001(cc).

[14] Según la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, en su Art. 2.002 (21 L.P.R.A. sec. 4052), "[t]oda obra de construcción dentro de los límites territoriales de un municipio, ... deberá pagar arbitrio de construcción correspondiente, previo al comienzo de dicha obra.

"En estos casos, se pagarán dichos arbitrios al municipio donde se lleve a cabo dicha obra previo a la fecha de su comienzo. ...

"Tanto la Administración de Reglamentos y Permisos como la Oficina de Permisos Municipal, en el caso de municipios autónomos, no podrán otorgar permisos de

costo de la obra de construcción *excluyendo* del mismo las partidas sobre las que ya hubiese recaído el cobro estatal de contribuciones.

Por los fundamentos antes expuestos procede revocar la sentencia del Tribunal de Circuito de Apelaciones que validó la imposición del arbitrio de construcción según la Ordenanza Núm. 30, serie 1994–95, del Municipio de Manatí, devolviéndose el caso al Tribunal de Primera Instancia para que determine qué parte del arbitrio impuesto por el Municipio de Manatí sobre la obra de Levy recayó sobre los materiales de construcción que ya habían sido objeto de tributación estatal. Esta porción no podrá ser cobrada por el Municipio de Manatí como parte del arbitrio.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García no intervino.

———

construcción a ninguna obra a ser realizada a un municipio que no cumpla con los requisitos impuestos en esta sección. ...

. . . . . . .

"*El arbitrio de construcción municipal será el vigente a la fecha de cierre de la subasta debidamente convocada o a la fecha de la adjudicación del contrato para aquellas obras de construcción que no requieran subastas. ...*" (Énfasis suplido).

Por otro lado, el Art. 18 de la Ley Orgánica de la Administración de Reglamentos y Permisos (ARPE), 23 L.P.R.A. sec. 71q, dispone que la "Administración no expedirá permiso de construcción sin haber exigido al solicitante prueba de que ha satisfecho los arbitrios municipales correspondientes a la construcción, impuestos por o que impongan los municipios".