ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| LPC & D, INC. <br><br> Apelante <br><br><br> V. <br><br><br> MUNICIPIO AUTÓNOMO DE SAN JUAN <br><br> Apelado | TA2025AP00583 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br> Caso Núm.: SJ2022CV09419 <br><br> Sobre: Arbitrio de construcción |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de enero de 2026.

Comparece ante nos LPC & D, Inc. (LPC&D o apelante) y solicita la revisión de una *Sentencia* emitida el 22 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] En esta, el foro primario desestimó la *Demanda* presentada por el apelante contra el Municipio de San Juan (Municipio o apelado). Ello, al resolver que la deducción de las partidas reflejadas en los *Taxes Payment Computation Sheet* de la base contributiva para el cómputo del arbitrio de construcción —autorizada en *ECA Gen. Contract v. Mun. de Mayagüez*, 200 DPR 665 (2018)— quedó sin efecto mediante la Ley Núm. 50-2018, que enmendó la *Ley de Municipios Autónomos*, Ley Núm. 81-1991, según enmendada, 21 LPRA sec. 4001 *et seq* (derogada).[2]

Por los fundamentos que se exponen a continuación, se confirma la determinación apelada.

---

[1] Entrada Núm. 30 del caso SJ2022CV09419 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 25 de agosto de 2025.

[2] El estatuto aplicable a los hechos del caso fue derogado al aprobarse el *Código Municipal de Puerto Rico*, Ley Núm. 107-2020, según enmendada, 21 LPRA sec. 7001 *et seq.*

**I.**

Este caso se originó el 26 de octubre de 2022, cuando LPC&D presentó una *Demanda* contra el Municipio relacionada con arbitrios de construcción.[3] En síntesis, alegó que fungió como contratista general del proyecto AC-018193 de la Autoridad de Carreteras y Transportación de Puerto Rico (ACT), conocido como el Proyecto del Puente Peatonal Elevado del Expreso PR-181, en San Juan, Puerto Rico, bajo un contrato de $5,995,017.00 y que, mediante carta del 6 de octubre de 2022, el Municipio le notificó un arbitrio de construcción de $299,750.85, equivalente al cinco por ciento (5%) del monto del contrato. No obstante, adujo la demandante que se debían deducir $2,467,153.01, conforme a lo resuelto por el Tribunal Supremo de Puerto Rico en el caso *ECA Gen. Contract v. Mun. de Mayagüez, supra.* Según alegó, al aplicar las deducciones, la base contributiva se redujo a $3,527,863.99, cuyo cinco por ciento (5%), equivalía a un arbitrio de construcción de $176,393.20.

Tras varios trámites procesales, el 29 de diciembre de 2023, LPC&D presentó una *Moción de Sentencia Sumaria.*[4] En esta, indicó que la controversia se limitaba a determinar si las partidas descontadas del cómputo del arbitrio de construcción —por no constituir actividades directas de construcción o por haberse realizado fuera de los límites territoriales del Municipio— debían formar parte de la base contributiva. Señaló que las partidas deducidas no eran una actividad de construcción sujeta al arbitrio de construcción.

Igualmente, la apelante planteó que el Municipio se encontraba impedido de litigar la controversia, toda vez que su postura había sido validada previamente en el caso *LPC & D, Inc. v. Municipio Autónomo de San Juan*, KLAN201900901, 2019 WL 6878339 (21 de noviembre

---

[3] *Íd.*, Entrada Núm. 1 en SUMAC.
[4] *Íd.*, Entrada Núm. 23 en SUMAC.

de 2019). En la alternativa, manifestó que, aun cuando no procediera deducir todas las partidas, resultaba procedente descontar aquellas expresamente permitidas por la *Ley de Municipios Autónomos, supra,* previo a su enmienda mediante la Ley Núm. 50-2018, *supra,* tales como los costos de adquisición de terrenos, edificaciones preexistentes, estudios, diseños, planos, permisos, consultoría y servicios legales. Hizo referencia a que iguales exclusiones reconocía el Código de Desarrollo Económico del Municipio, Ordenanza Núm. 28, Serie 2001-02, Revisión Octubre 2017, por lo que el apelado no podía actuar en contra de sus propios actos.

El 31 de enero de 2024, el Municipio presentó una *Oposición a Moción de Sentencia Sumaria y Solicitud Para que se Dicte Sentencia a Favor del Municipio de San Juan.*[5] A grandes rasgos, expresó que las deducciones reconocidas en *ECA Gen. Contract v. Mun. de Mayagüez, supra,* dejaron de ser aplicables tras la enmienda estatutaria, ya que el marco legal vigente únicamente permitía las deducciones expresamente consignadas en la ley. Señaló que, dado que la *Ley de Municipios Autónomos, supra,* no contemplaba deducciones específicas, no procedía deducirse partida alguna y que cualquier determinación distinta contravenía la intención legislativa reflejada en la Ley Núm. 50-2018, *supra.*

En ese sentido, el apelado argumentó que dicha enmienda dispuso que el arbitrio de construcción debía calcularse sobre el costo total de la obra según adjudicado en la subasta por la agencia contratante, permitiendo únicamente las deducciones expresamente autorizadas y excluyendo aquellas basadas en interpretación. A tales efectos, planteó que no procedía alegar que la Ordenanza Núm. 28 autorizaba tales deducciones, pues ésta no podía prevalecer sobre la ley y utilizó como base el Artículo 2.002 de la *Ley de Municipios*

---

[5] *Íd.,* Entrada Núm. 25 en SUMAC.

*Autónomos, supra,* previo a la enmienda de la Ley Núm. 50-2018, *supra.*

Además, el Municipio sostuvo que, aun bajo el supuesto de que la Ley Núm. 50-2018, *supra,* no hubiera alterado el método de cómputo del arbitrio de construcción, LPC&D no acreditó de dónde surgían las partidas reducidas. Por último, en cuanto al planteamiento de impedimento de relitigar, puntualizó que el caso *LPC & D, Inc. v. Municipio Autónomo de San Juan,* KLAN201900901, involucraba proyectos distintos, por lo que la base contributiva utilizada para fijar el arbitrio no era la misma.

Posteriormente, el 28 de febrero de 2024, el apelante presentó una réplica, en la que reiteró que, conforme al caso *LPC & D, Inc. v. Municipio Autónomo de San Juan,* KLAN201900901, el arbitrio en cuestión debía determinarse a partir de las definiciones de arbitrio de construcción y actividad de construcción. De este modo, razonó que aquellas partidas del contrato que no constituían actividades de construcción no podían ser gravadas. Asimismo, arguyó que la Ley Núm. 50-2018, *supra,* resultaba ambigua y guardaba silencio respecto a las partidas deducibles, por lo que, al tratarse de una ley contributiva, debía interpretarla a favor del contribuyente. Además, manifestó que *Ley de Municipios Autónomos, supra,* autorizaba, pero no imponía, la obligación de establecer un arbitrio de construcción, por lo que el Municipio no estaba compelido a gravar todas las actividades de construcción que la ley autorizaba, sino que podía limitar su aplicación a determinadas partidas mediante ordenanza.

En torno a la Ordenanza Núm. 28, el apelante arguyó que el Municipio incurrió en dejadez al no actualizarla oportunamente. Añadió que, de resultar inaplicable dicha ordenanza por responder a una versión anterior de la ley, el Municipio carecía de base legal para exigir el pago del arbitrio de construcción, al no existir una ordenanza vigente que los autorizara. De igual modo, afirmó que el apelado no

podía actuar en contra de sus propios actos respecto al lenguaje y contenido de la ordenanza aprobada.

De otra parte, LPC&D reiteró la procedencia de la doctrina de *res judicata* en su versión de cosa juzgada e impedimento colateral por sentencia, al entender que se trataba de la misma controversia previamente atendida por este Tribunal de Apelaciones: la facultad del Municipio para imponer el arbitrio de construcción sobre partidas previamente determinadas como ajenas a actividades de construcción. Finalmente, respecto al señalamiento de falta de prueba, indicó que las partes habían estipulado tanto las partidas deducidas como sus cuantías, por lo que la controversia era exclusivamente de derecho.

Sometido el asunto, el 22 de agosto de 2025, el TPI emitió la *Sentencia* apelada en la que concluyó que, a raíz de las enmiendas introducidas por la Ley Núm. 50-2018, *supra*, al Artículo 2.002 (d) de la *Ley de Municipios Autónomos, supra,* las deducciones reconocidas en *ECA Gen. Contract v. Mun. de Mayagüez, supra,* quedaron desaprobadas a partir del 24 de enero de 2018.[6] Ello, al razonar que la enmienda limitó las deducciones a aquellas expresamente autorizadas por ley y prohibió a los tribunales reconocer deducciones mediante interpretación judicial.

El foro primario señaló que, aun cuando era del criterio de que podían excluirse de la base contributiva aquellas partidas que no constituyeran actividades directas de construcción y que se evidenciara que fueron previo al inicio del proyecto, el lenguaje expreso de la enmienda le impedía adoptar dicha interpretación. Expuso que, previo a la enmienda, la *Ley de Municipios Autónomos, supra,* permitía deducir ciertos costos específicos —como la adquisición de terrenos, edificaciones ya construidas y enclavadas en

---

[6] *Íd.,* Entrada Núm. 30 en SUMAC. Notificada el 25 de agosto de 2025.

el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales— marco bajo el cual se resolvió *ECA Gen. Contract v. Mun. de Mayagüez, supra*. No obstante, distinguió que dicho caso se decidió conforme a la Ley Núm. 199-1996, cuyas disposiciones incompatibles quedaron sin efecto tras la aprobación de la Ley Núm. 50-2018, *supra.*

A su vez, el TPI calificó como altamente reprochable, que LPC&D, aun conociendo o debiendo conocer que el caso *ECA Gen. Contract v. Mun. de Mayagüez, supra*, se resolvió bajo un estatuto distinto, propusiera hacer caso omiso a las enmiendas aprobadas por la Asamblea Legislativa para determinar la base contributiva aplicable al cómputo del arbitrio de construcción. Añadió que resultaba más reprochable que el apelante no se limitara a las partidas identificadas por la opinión mayoritaria de ese caso, sino que incorporara otras mencionadas en la opinión disidente, incluyendo partidas correspondientes al arbitrio de construcción y patente municipal, las cuales no eran deducibles.

Asimismo, determinó que, por tener rango de ley, la Ley Núm. 50-2018, *supra*, prevalecía sobre cualquier ordenanza municipal en los aspectos incompatibles. Concluyó que la tasa aplicable al proyecto era de cinco por ciento (5%) del costo total de la obra adjudicada en la subasta, ascendente a $5,995,017.00. Así las cosas, desestimó la Demanda y le impuso a LPC&D el pago de $299,750.85. El TPI estableció que no existía controversia sobre los siguientes hechos:

1. LPC&D, Inc. (LPC&D) es una corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demanda, que se desempeña principalmente en la industria de la construcción. Las oficinas principales de LPC&D quedan sitas en Las Piedras, Puerto Rico.
2. El Municipio Autónomo de San Juan (el MSJ) es una entidad jurídica de gobierno local con capacidad legal independiente y separada del Gobierno del Estado Libre Asociado de Puerto Rico y con capacidad para demandar y ser demandado.
3. LPC&D es el contratista general del proyecto de la Autoridad de Carreteras y Transportación de Puerto Rico (ACT) número AC-018193 conocido como el *Proyecto del*

*Puente Peatonal Elevado del Expreso PR-181*, sito en San Juan, Puerto Rico (*el Proyecto*).

4. Los costos, términos y condiciones entre LPC&D y la ACT surgen del *Contrato Número 2020-000176* (*el Contrato*).

5. La *Subasta Formal P-19-58*, para el *Proyecto AC-018193*, se celebró el 26 de junio de 2019.

6. Para efectos de la *Subasta Formal P-19-58*, y del correspondiente *Contrato Núm. 2020-000176*, el costo total del *Proyecto* fue $5,995,017.00.

7. Mediante carta del 6 de octubre de 2022, depositada en el correo el 7 de octubre de 2022, el MSJ envió a LPC&D una *Notificación de Pago de Arbitrios de Construcción* para el *Proyecto* (*la Notificación*) mediante la cual el MSJ notificó a LPC&D que el monto de los arbitrios de construcción que LPC&D tiene que pagar - con relación al *Proyecto* - es $299,750.85; equivalente al 5% del monto total del *Contrato*, sin ningún tipo de deducción.

8. Posterior al mes de octubre de 2022, LPC&D calculó el arbitrio de construcción pagadero al MSJ con relación al *Proyecto* en $176,393.20, luego de hacer las deducciones que esta consideró pertinentes a la luz de lo resuelto por el Tribunal Supremo de Puerto Rico en el caso de ECA General Contractors, Inc. v. Municipio Autónomo de Mayagüez, 200 D.P.R. 665 (2018).

9. La tasa de arbitrio de construcción aplicable al *Proyecto* es 5%.

10. Las partidas que LPC&D descontó del monto total de $5,995,017.00 para su cómputo del arbitrio para el *Proyecto* son las siguientes:

1. Impuestos -
a. Arbitrios - $176,393.20
b. Patente - $29,975.09
c. Impuesto sobre Servicio - $83,930.24
2. Sellos del Colegio de Ingenieros y Agrimensores - $5,995.02
3. Seguros - $179,850.51
4. Servicios de Seguridad o Guardia - $163,667.51
5. Estudios de Agrimensura - $182,000.00
6. Permisos - $59,950.17
7. Ganancia - $599,501.70
8. Planos y Dibujos - $119,900.34
9. Servicios Legales - $29,975.09
10. Servicios de Consultoría Estructural - $44,962.63
11. Planos de Agrimensura - $59,950.17
12. Gastos Administrativos de Oficina - $299,750.85
13. Gastos de Financiamiento - $179,850.51
14. Adquisición y Transportación de Equipos - $150,000.00
15. Servicios de Pruebas y de Control de Calidad - $50,000.00
16. Servicios de Itinerario - $11,500.00
17. "Allowance" para Autoridad de Energía Eléctrica - $10,000.00
18. "Allowance" para Pintura a Base de Plomo - $10,000.00
19. "Allowance" para Materiales con Asbestos - $20,000.00
Total de partidas y costos que LPC&D descontó - $2,467,153.01

Insatisfecho, el 8 de septiembre de 2025, LPC&D presentó una *Moción de Reconsideración.*[7] Sostuvo, entre otros planteamientos, que el foro apelado erró al concluir que la Ley Núm. 50-2018, *supra*, dejó sin efecto lo resuelto en *ECA Gen. Contract v. Mun. de Mayagüez*,

---

[7] *Íd.*, Entrada Núm. 31 en SUMAC.

*supra*, ya que la misma no enmendó las definiciones de arbitrio de construcción y actividad de construcción. A su juicio, conforme esas definiciones, el Municipio carecía de facultad para gravar partidas del contrato que no constituyeron actividades directas de construcción. Indicó que, aunque tras la enmienda sólo se permitían las deducciones expresamente autorizadas por ley y no procedían deducciones por interpretación, el estatuto resultaba ambiguo al no identificar cuáles deducciones estaban permitidas. Igualmente, alegó que el tribunal *a quo* incidió al sostener que la *Ley de Municipios Autónomos, supra*, prevalecía sobre la Ordenanza Núm. 28, cuya aprobación era necesaria para imponer arbitrios. Finalmente, reiteró que las partidas reclamadas como deducibles coincidían con aquellas que el Tribunal Supremo había determinado que no constituían actividades directas de construcción y que no podían ser gravadas.

El 24 de septiembre de 2025, el Municipio presentó una *Oposición a Solicitud de Reconsideración.*[8] Entre otros, manifestó que, a tenor con el séptimo párrafo del Artículo 2.002(d) de la *Ley de Municipios Autónomos, supra*, la determinación del arbitrio de construcción debía basarse en el costo total de la obra considerado en la adjudicación de la subasta por la agencia contratante. Añadió que únicamente procedían las deducciones expresamente autorizadas por ley. Señaló que el apelante no colocó al tribunal en posición de identificar cuáles deducciones específicas permitía el estatuto. Asimismo, planteó que las deducciones contempladas en la Ordenanza Núm. 28 no procedían, dado que la ley tenía prelación y que el caso *LPC & D, Inc. v. Municipio Autónomo de San Juan,* KLAN201900901, tenía únicamente efecto persuasivo.

En igual fecha, el foro primario emitió una *Orden* en la que declaró No Ha Lugar la petición de reconsideración.[9] Fundamentó su

---

[8] *Íd.*, Entrada Núm. 33 en SUMAC.
[9] *Íd.*, Entrada Núm. 34 en SUMAC.

determinación en que la ley tiene jerarquía superior a cualquier ordenanza municipal; que las disposiciones de la Ordenanza Núm. 28 incompatibles con la Ley Núm. 50-2018, *supra*, debían tenerse por no puestas, sin que ello implicara la nulidad total de la ordenanza; que los términos arbitrio de construcción y actividad de construcción no identificaban ni incluían deducción alguna para fines del valor tributable de la obra y/o el cómputo de la contribución. Asimismo, estableció que el dictamen de este Tribunal de Apelaciones de un caso distinto tenía carácter meramente persuasivo.

Aún inconforme, el 24 de noviembre de 2025, LPC&D presentó un recurso de apelación ante este Tribunal y planteó que el TPI incurrió en los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SUMARIA Y DICTAR LA SENTENCIA AL NO APLICAR LA DOCTRINA DE *RES JUDICATA* A LA CONTROVERSIA EN EL CASO DE AUTOS.
>
> **SEGUNDO ERROR:** ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SUMARIA Y DICTAR LA SENTENCIA AL NO APLICAR LO RESUELTO POR EL TRIBUNAL SUPREMO DE PUERTO RICO EN EL CASO DE ECA, *SUPRA*.
>
> **TERCER ERROR:** ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SUMARIA Y DICTAR LA SENTENCIA Y RESOLVER QUE, BAJO LA LEY DE MUNICIPIOS AUTÓNOMOS, EL MSJ NO PODÍA AUTORIZAR, EN LA ORDENANZA IMPONIENDO EL ARBITRIO DE CONSTRUCCIÓN, EL QUE SE PUDIESEN DESCONTAR PARTIDAS DEL CÓMPUTO DEL ARBITRIO.
>
> **CUARTO ERROR:** ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA RECONSIDERACIÓN Y NO DAR DEFERENCIA A LO YA RESUELTO POR ESTE HONORABLE TRIBUNAL EN SU SENTENCIA DEL 21 DE NOVIEMBRE DE 2019 EN EL CASO DE L.P.C. & D., INC. V. MUNICIPIO AUTÓNOMO DE SAN JUAN, CASO NÚM. KLAN201900901, 2019 WL 6878339 (TA 2019).
>
> **QUINTO ERROR:** ERRÓ EL TPI AL EMITIR LA ORDEN DECLARANDO NO HA LUGAR LA RECONSIDERACIÓN.

En esencia, el apelante sostuvo que a la presente controversia le era aplicable la doctrina de *res judicata*, debido a que este Tribunal de Apelaciones había resuelto previamente un caso con perfecta identidad entre las cosas, causas, partes y calidad en que lo fueron, en el que alegadamente se determinó que la Ley Núm. 50-2018, *supra*, no dejó sin efecto lo resuelto en *ECA Gen. Contract v. Mun. de*

*Mayagüez, supra.* A su juicio, ello impedía al Municipio imponer el arbitrio de construcción sobre todas las partidas del contrato y obligado a limitarlo a aquellas directamente relacionadas con la actividad de construcción, por lo que el TPI debía dictar sentencia sumaria a su favor.

Por otro lado, argumentó que, aunque *ECA Gen. Contract v. Mun. de Mayagüez, supra,* se resolvió bajo una versión anterior de la *Ley de Municipios Autónomos, supra,* la decisión se emitió tras la vigencia de la Ley Núm. 50-2018, *supra,* por lo que el Tribunal Supremo debió tener conocimiento del estatuto al momento de resolver la controversia que entonces se encontraba ante su consideración. Añadió que la enmienda no alteró las definiciones de arbitrio de construcción ni de actividad de construcción aplicables al caso, por lo que el precedente mantenía vigencia. Sostuvo, además, que aunque la enmienda limitó las deducciones a aquellas expresamente autorizadas por ley, el estatuto no las especificó, lo que generaba ambigüedad que debía interpretarse a su favor.

LPC&D planteó que aun si la Ley Núm. 50-2018, *supra,* resultaba aplicable, debían excluirse del cómputo del arbitrio las partidas permitidas por la Ordenanza Núm. 28. En ese sentido, alegó que el TPI erró al concluir que la ley prevalecía sobre la ordenanza municipal, pues la imposición del arbitrio requería la aprobación de una ordenanza por dos terceras partes y el Municipio podía optar por imponer un arbitrio de construcción menos oneroso que el autorizado por ley, siempre que no lo excediera.

Finalmente, en cuanto al caso *LPC & D, Inc. v. Municipio Autónomo de San Juan,* KLAN201900901, reconoció que las decisiones de este Tribunal de Apelaciones no constituían precedentes vinculantes, pero sostuvo que el TPI no debía descartarlas como meramente persuasivas sin exponer una razón ni conceder deferencia a lo resuelto por un panel hermano.

Por su parte, el 24 de diciembre de 2025, el Municipio presentó su alegato y aseveró que el recurso carecía de argumento que justificara la revocación del dictamen apelado. Reiteró que la base para el cómputo del arbitrio era el monto total del contrato, ascendente a $5,995,017.00, y que, ante la ausencia de una disposición legal que autorizara deducciones específicas, las pretensiones del apelante resultaban improcedentes. Añadió que el texto del Artículo 2.002 de la *Ley de Municipios Autónomos, supra,* evaluado por el Tribunal Supremo en *ECA Gen. Contract v. Mun. de Mayagüez, supra,* difería del texto aplicable al caso de autos.

El apelado planteó que la intención legislativa al aprobar la Ley Núm. 50-2018, *supra,* fue aclarar que el arbitrio de construcción debía computarse sobre el costo total de la obra adjudicado por la agencia contratante y que solo podían aplicarse las deducciones expresamente autorizadas por ley, las cuales la Asamblea Legislativa no había establecido. Por ello, puntualizó que la ordenanza municipal no podía autorizar deducciones incompatibles con la ley. Señaló que, aun si se aceptara la interpretación propuesta por LPC&D, este no evidenció el origen de las partidas deducidas, pretendiendo que el foro primario aceptara sus cálculos sin prueba.

En cuanto al planteamiento de cosa juzgada basado en *LPC & D, Inc. v. Municipio Autónomo de San Juan,* KLAN201900901, el apelado distinguió que se trataba de proyectos distintos, con bases contributivas diferentes y bajo versiones distintas del Artículo 2.002 de la *Ley de Municipios Autónomos, supra,* aplicables a los años 2015 y 2020, por lo que no aplicaba dicha doctrina.

## II.

### A. Sentencia sumaria

La sentencia sumaria es un mecanismo procesal que permite disponer un caso ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales que

requieran ser dilucidadas en un juicio plenario. *Coop. Seguros Múltiples de PR v. ELA,* 2025 TSPR 78, 216 DPR ___ (2025); *Birriel Colón v. Econo y otro,* 213 DPR 80 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). Un hecho material es aquel esencial y pertinente que pueda afectar el resultado de la reclamación según el derecho sustantivo. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1; *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Así, procede dictar sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, junto a cualquier otra evidencia, demuestran que no existe controversia real sustancial sobre los hechos esenciales. Regla 36.3(e) de Procedimiento Civil, *supra,* R. 36.3 (e); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda están en disputa mediante evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra,* págs. 336-337. Cuando la petición de sentencia sumaria está respaldada con declaraciones juradas u otra prueba, el oponente no puede descansar en meras alegaciones, sino que debe responder con igual grado de especificidad y detalle. Regla 36.3 (c) de Procedimiento Civil, *supra,* R. 36.3 (c); *Birriel Colón v. Econo y otro, supra; Ramos Pérez v. Univisión, supra,* pág. 215. Empero, la falta de prueba para refutar la evidencia del promovente no implica la concesión automática de la sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra,* pág. 337.

El Tribunal Supremo estableció el estándar para este Foro apelativo revisar una sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra.* Primero, este Tribunal se encuentra en la misma posición que el foro primario al revisar *de novo* una solicitud de

sentencia sumaria, conforme con la Regla 36 de Procedimiento Civil, *supra*, R. 36. En tal ejercicio, solamente se puede considerar evidencia presentada al foro *a quo*, y se debe examinar el expediente de la forma más favorable a la parte opositora. *Íd., supra*, pág. 116.

Segundo, corresponde verificar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos codificados por la Regla 36 de Procedimiento Civil, *supra*, R. 36 y discutidos en el caso *SLG Zapata- Rivera v. J.F. Montalvo, supra. Íd.* Tercero, debe determinarse si en realidad existen hechos materiales en controversia. De ser así, es necesario distinguir entre los hechos controvertidos e incontrovertidos, según dispone la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Íd.* Cuarto, si no existen hechos materiales en controversia, procede evaluar si el TPI aplicó correctamente el derecho. *Íd.*, pág. 119.

### B. Arbitrio de construcción

La facultad primordial de imponer contribuciones recae sobre la Asamblea Legislativa, la cual puede delegar dicha potestad a los municipios mediante un mandato claro y expreso. Art. VI, Sec. 2, Const. ELA; *Interior Developers v. Mun. de San Juan*, 177 DPR 693, 703 (2009). Al tratarse de una facultad delegada, los municipios carecen de poder inherente para imponer tributos de forma independiente del Estado. *Interior Developers v. Mun. de San Juan, supra*; *Levy, Hijo v. Mun. de Manatí*, 151 DPR 292 (2000).

En ese contexto, mediante la *Ley de Municipios Autónomos, supra*, la Asamblea Legislativa facultó a los municipios a imponer tributos con el fin de recaudar fondos para la prestación de servicios. *Interior Developers v. Mun. de San Juan, supra.* Entre los tributos autorizados se encuentra el arbitrio de construcción. *Íd.*; Art. 2.002 de la *Ley de Municipios Autónomos, supra*, sec. 4052. Al respecto:

> Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o

jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal o del Gobierno Federal, incluyendo aquella obra que no requiera la solicitud o expedición de un permiso por la Oficina de Gerencia de Permisos o por un municipio autónomo, deberá pagar arbitrio de construcción correspondientes, previo al comienzo de dicha obra.

A saber, toda obra de construcción realizada dentro de los límites territoriales de un municipio está sujeta al pago de arbitrios de construcción, previo al inicio de la obra.

El arbitrio aplicable "será el vigente a la fecha de cierre de la subasta debidamente convocada o a la fecha de la adjudicación del contrato para aquellas obras de construcción que no requieran subastas". Art. 2.002 de la *Ley de Municipios Autónomos, supra*. De ello se desprende que los bienes y servicios adquiridos mediante subasta están sujetos al arbitrio existente al momento de su cierre. *ECA Gen. Contract v. Mun. de Mayagüez, supra*. El arbitrio de construcción se define como "aquella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras (2/3) partes para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción y/o una obra de construcción[10] dentro de los límites territoriales del municipio." Art. 1.003 (cc) de la *Ley de Municipios Autónomos, supra*, sec. 4001.

Mediante la Ley Núm. 50-2018, *supra*, vigente desde el 24 de enero de 2018, la Asamblea Legislativa enmendó la *Ley de Municipios Autónomos, supra*, con el propósito de fortalecer las herramientas fiscales de los municipios. En particular, se enmendó el inciso (d) del Artículo 2.002 de la *Ley de Municipios Autónomos, supra*, para disponer:

---

[10] Mediante la Ley Núm. 50-2018, *supra*, se enmendó el incido (dd) del Artículo 1.003 de la *Ley de Municipios Autónomos, supra*, para que el mismo leyera como sigue:

Actividad de construcción: Significará el acto o actividad de construir, reconstruir, remodelar, reparar, remover, trasladar o relocalizar cualquier edificación, obra, estructura, casa o construcción de similar naturaleza fija y permanente, pública o privada, realizada entre los límites territoriales de un municipio,...

**Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el valor tomado en cuenta en la adjudicación de la subasta por la agencia contratante, o el precio establecido en el contrato de construcción en el caso de contrataciones privadas, siempre y cuando el Director de Finanzas determine que el precio estipulado en el contrato corresponde razonablemente con el costo promedio por pie cuadrado aceptable generalmente en la industria de la construcción. Las únicas deducciones permitidas son las expresamente aprobadas por la Ley y bajo ningún concepto se podrá reclamar deducciones por interpretación.** El arbitrio de construcción aquí autorizado será adicional al pago de patente municipal, aun cuando ambas contribuciones recaigan sobre la misma base contributiva. (Énfasis nuestro).

El Informe Positivo de la Comisión de Asuntos Municipales de

la Cámara de Representantes con respecto al P. de la C. 18 de 25 de

junio de 2017, destacó que:

En adición, consideramos necesario enmendar el inciso (d) [último párrafo] del Artículo 2.002 de la Ley 81-1991, *supra,* a los fines de aclarar lo que considera el costo total de la obra y la base tributaria del proyecto, además, de establecer de manera taxativa las partidas y deducciones que recaen fuera del [cómputo] del costo total de la obra. De esta manera clarificamos la posible ambigüedad que pueda surgir al interpretar el "costo total de la obra". Bajo la misma premisa, también se debe enmendar el inciso (a) del Artículo 2.007 de la Ley 81-1991, *supra,* a los fines de incorporar el término "costos totales de la obra".[11]

---

[11] Es importante puntualizar que el proyecto de ley original contemplaba el siguiente lenguaje para el inciso (d) del Artículo 2.002 de la *Ley de Municipios Autónomos, supra*:

Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el costo *de toda actividad directa de construcción, que ocurren durante y como parte de la obra de construcción,* en que se incurra para realizar el proyecto luego de deducirle*, exclusivamente,* el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales.

No obstante, la medida fue aprobada con enmiendas propuestas por el Senado de Puerto Rico, a las cuales concurrió la Cámara de Representantes de Puerto Rico, para disponer finalmente lo siguiente:

Para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra será el ~~costo de toda actividad directa de construcción, que ocurren durante y como parte de la obra de construcción, en que se incurra para realizar el proyecto luego de deducirle, exclusivamente, el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales~~ valor tomado en cuenta en la adjudicación de la subasta por la agencia contratante, o el precio establecido en el contrato de construcción en el caso de contrataciones privadas, siempre y cuando el Director de Finanzas determine que el precio estipulado en el contrato corresponde razonablemente con el costo promedio por pie cuadrado aceptable generalmente en la industria de la construcción. Las únicas deducciones permitidas son las expresamente aprobadas por la Ley y bajo ningún concepto se podrá reclamar deducciones por interpretación. El arbitrio de construcción aquí autorizado será adicional al pago de patente municipal, aun

Previo a dicha enmienda, el Artículo 2.002 de la *Ley de Municipios Autónomos, supra,* disponía que para los propósitos de la determinación del arbitrio de construcción, el costo total de la obra era el costo en que se incurriera para realizar el proyecto luego de deducir el costo de adquisición de terrenos, edificaciones ya construidas y enclavadas en el lugar de la obra, costos de estudios, diseños, planos, permisos, consultoría y servicios legales. En base a ese anterior estado de derecho, fue que el Tribunal Supremo estableció que la Asamblea Legislativa excluyó aquellas partidas que no constituían una actividad directa de construcción y que ocurrían antes de comenzar la obra o construcción. *ECA Gen. Contract v. Mun. de Mayagüez, supra,* pág. 677. Por lo anterior, concluyó que el arbitrio de construcción solamente se podía imponer sobre el costo de la actividad de construcción, según definida por el estatuto, y no sobre todas las partidas incluida en el contrato de obra. *Íd.*

**III.**

En el presente recurso, LPC&D sostuvo que el TPI erró al no aplicar la doctrina de *res judicata*; al no extender al caso de autos lo resuelto en *ECA Gen. Contract v. Mun. de Mayagüez, supra,* pese a la vigencia de la Ley Núm. 50-2018, *supra*; y al concluir que el Municipio no podía autorizar, mediante ordenanza municipal, deducciones en el cómputo del arbitrio de construcción. Asimismo, alega que el foro primario incurrió en error al denegar la reconsideración sin conceder deferencia a la sentencia emitida por este Tribunal en el recurso KLAN201900901.

De entrada, en este caso no existe controversia genuina respecto a los hechos materiales. A saber, LPC&D fungió como contratista general del Proyecto AC-018193, cuya subasta cerró el 26

---

cuando ambas contribuciones recaigan sobre la misma base contributiva.

de junio de 2019, y que el costo total del proyecto para fines contractuales ascendió a $5,995,017.00. Asimismo, el Municipio notificó un arbitrio de construcción de $299,750.85, equivalente al cinco por ciento (5%) del monto contractual, sin deducciones, y el apelante alegó que se debía reducir la base contributiva mediante deducciones por $2,467,153.01 para computar un arbitrio de $176,393.20. De esta manera, nos corresponde evaluar si el foro apelado aplicó correctamente el Derecho.

La controversia de este caso radica en determinar si, al amparo del Artículo 2.002(d) de la *Ley de Municipios Autónomos, supra,* procedía excluir del cómputo del arbitrio las deducciones dispuestas en el estatuto previo a la enmienda por virtud de la Ley Núm. 50-2018, *supra,* que fueron reconocidas en el caso *ECA Gen. Contract v. Mun. de Mayagüez, supra.* En este análisis resulta determinante que la subasta del proyecto cerró en junio de 2019, esto es, con posterioridad a que entrara en vigor la Ley Núm. 50-2018, *supra,* el 24 de enero de 2018, por lo que el marco normativo aplicable a este caso era el texto enmendado de la ley.

Sobre el particular, la Asamblea Legislativa, al enmendar el Artículo 2.002(d), alteró el punto de partida del cómputo del arbitrio de construcción al fijar el valor considerado en la adjudicación de la subasta por la agencia contratante, o el precio del contrato como el costo total de la obra. Además, incorporó inequívocamente que las únicas deducciones permitidas serían las expresamente aprobadas por ley y que bajo ningún concepto podían reclamarse deducciones por interpretación.

Un examen del historial legislativo demuestra, además, que la Asamblea Legislativa consideró y descartó permitir un cómputo centrado en la actividad directa de construcción con deducciones específicas. En ese contexto, no existe ambigüedad alguna que deba

interpretarse a favor del contribuyente, sino una determinación legislativa expresa que excluye el cómputo propuesto por el apelante.

A la luz de lo anterior, no procedía extender al caso de autos lo resuelto en *ECA Gen. Contract v. Mun. de Mayagüez*, *supra*, en el que se interpretó una versión anterior del estatuto, sustancialmente distinta a la aplicable al caso. El hecho de que la decisión del Máximo Foro Judicial se emitió con posterioridad a la vigencia de la Ley Núm. 50-2018, *supra*, no altera este análisis, pues lo determinante era la versión del estatuto aplicable a los hechos que dieron lugar a aquella controversia y la que rige el presente caso que ocurrió luego que entrara en vigor la enmienda.

Tampoco resultó persuasivo el argumento de que el estatuto era ambiguo por no especificar las deducciones permitidas. La norma enmendada fue clara en fijar la base contributiva y en limitar las deducciones a aquellas expresamente autorizadas por ley, prohibiendo su creación por interpretación judicial. Si el ordenamiento no identificó deducciones adicionales aplicables, la consecuencia jurídica no era autorizar deducciones interpretativas, sino que precisamente resultaba forzoso concluir que no procedían deducciones no expresamente reconocidas.

De otro lado, tampoco le asiste la razón al apelante en cuanto al señalamiento relacionado con la doctrina de *res judicata* respecto al caso *LPC & D, Inc. v. Municipio Autónomo de San Juan*, KLAN201900901. Se trata de una determinación previa de este Foro, que no era vinculante al caso de autos, relativa a un proyecto distinto y bajo un marco estatutario diferente. Por ello, el TPI actuó correctamente al rechazar su aplicación.

Respecto a los argumentos relacionados con la Ordenanza Núm. 28, si bien es cierto que los municipios imponen arbitrios mediante ordenanza, dicha facultad es de naturaleza delegada y está sujeta a los límites fijados por la Asamblea Legislativa. En

consecuencia, aun cuando el Artículo 4.42 de la Ordenanza Núm. 28 contempló un concepto de costo total de la obra que excluía ciertos gastos iniciales, dicha disposición no podía prevalecer en la medida en que resultó incompatible con el Artículo 2.002(d) según enmendado, que fijó una base contributiva distinta y restringió las deducciones a las expresamente autorizadas por ley. No obstante, tal incompatibilidad no acarrea la nulidad total de la ordenanza municipal ni afecta la facultad del Municipio para imponer el arbitrio de construcción, por lo que el foro primario actuó correctamente al tener por no puestas únicamente aquellas disposiciones incompatibles con la ley.

Finalmente, la denegatoria de la reconsideración no constituyó error, ya que, como se ha concluido, la Sentencia se fundamentó en la correcta aplicación de la jerarquía normativa y en la claridad del texto estatutario atinente a los hechos del caso.

Por todo lo anterior, procede confirmar la determinación apelada.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones